Mr. Justice Gantt
delivered the'opinion of the Court.
The defence in this case rests upon the doctrine of implied contracts; a principle not confined in its operation, but applying indiscriminately to every employment. Under this head, Blackstone (443) says, “ Implied contracts are such as reason and justice dictate, and which therefore the law presumes that every man undertakes to perform. As if I employ any person to do any business for me, or perform any work; the law implies that I undertook or contracted to pay him as much as his labour deserves.” I take it therefore to be a correct and legal principle, that in 3uits requiring great professional labour, where much timo must necessarily be consumed, and deligence and skill required in the preparation and management of them, an attorney may rightfully and legally charge, by way of counsel fee, a sum proportioned to the value of the services, and which a jury of the country, upon evidence before them, are competent to ascertain and decide upon. The handi-dicraftsman employed to lay the foundation, and plan the superstructure of a house, can look with confidence to the law for a full indemnity for his services ; and the law mechanic, in a great and difficult case, where mental skill and bodily exertion are to unite, in the foundation and struc- *152 tuiv of a suit at law, more than ordinarily complex and dii ficult, may with equal confidence and right look to the •same principle for his indemnity.- It would reflect infinite discredit to the law were it otherwise, whose rule is reason, and whose voice is justice and truth.
It is certainly not a new case that gentlemen of the law-are sometimes called upon to take part in the management of causes of great weight and difficulty, which do not stand upon the footing of ordinary suits, and which, in justice to themselves they could never undertake, unless the principle before advanced was made applicable to them. At various times gentlemen of distinguished talents have been called on to afford occasional assistance in the important contest about the Jews land. My brother Nott, who resided in the interior part of the state, when at the bar, was paid $$500 for once attending at Abbeville court. And although I do not know the fact, yet I am persuaded that Col. Drayton., of distinguished talents,-and who resides in the city of Charleston, must have received, when called on for a similar purpose, double that sum.
The property in contest, equal in value to a Royal Domain, had been claimed by .several, among whom the present plaintiff had never been named as a claimant, till evidenced by those actions. The name of Tancey, as being of counsel for him, added weight and importance to his claim. And well it might, for who more distinguished than the deceased in the line of his profession ? Who ever possessed a move lofty spirit, or more towering mind ? Who better calculated to stem the torrent of prejudice that was likely to arise from an attempt to dispossess so many settlers, of what, by possession and lapse of time they considered their proper freehold ? These were the weighty considerations which induced a selection of this gentleman; who, with great professional skill and learning, united as much of firmness and intrepidity as ever was possessed by mortal man. Such was the, man in right of whose widow and minor children the defendants in *153 “Jus case, under the peculiar circumstances attending it, felt it their duty to set up the discount before noticed.
It is worthy of remark that the plaintiff does not deny the applicability of the doctrine of implied contracts to this case, with the declaration that the fee charged was too great. The only objection which he advances is, that the presumption of law in his favor, of payment having been made, had been disregarded by the jury. Now the law does presume, in various instances, for the purpose of promoting the great ends of justice and right, as in the application of the principle of the law against himself, as regards an implied undertaking on his part; but when it is made to apply to the question of payment, the declaration as dravra by the plaintiff, is not legally correct,
In the first place it is not true, in point of fact, that the services had been all rendered before the date of the note. Years of diligence were to be devoted to these cases before they'could be placed in a proper train for trial. Prudence and caution were to be observed at every step and stage of the proceeding. And this continued to be the case long^ after the note was given ; payment therefore could not be presumed. Besides payment, if made, is capable of being proved, and the law imposes the burthen of this proof upon the person on whom the obligation to pay rests.
In the instance before us, we find that the deceased was actually engaged in making preparations, nay, devoting the last moments of his existence in the service of his client; dying, I may say, for him, that his suit might live. Under such circumstances, would not any liberal and generous mind have felt indignant at the idea of § 800 being-recovered by the plaintiff out of the little pittance left by the deceased, not equal to the support and maintenance of those whom he held most dear; without the plaintiff' having, at the same time, furnished to the jury, who were called upon to allow his demand the most satisfactory evidence, that the important services rendered by the deceased had been amply and honorably remunerated ? No such *154 evidence was offered, and the jury were too just to presume that compensation had been rendered.
These observations apply with equal force to the second ground taken in the brief; that the services were not worth the amount allowed by the jury.
They certainly were better judges of this fact than the plaintiff; and when it is remembered that juries are apt to scan, with a cautious eye, the exhibition of a demand, such as was presented to their view by the defendants in this case, the prompt manner of finding their verdict to the full amount of the limited discount which had been fif-ed, not only does the highest credit to the jury who tried this case, but is demonstrative of their certain conviction, that the charge for service as rendered in, was altogether just and legal. I believe that had a larger sum been demanded, the jury would have .felt themselves bound to have allowed more, in justice to the representatives of the deceased. The deficiency, however, can only be expected at the hands of another jury, or from a more correct view on the part of the plaintiff, of the obligation he was under to reward those services.
On the third ground, of their being no evidence of a contract between the parties, I have already shewn that the law itself implies a contract in a case like the one before us ; and it is well for the representatives of the deceased that it does so.
■As to the fourth and last ground taken, that the services were rendered to Nicholson and Duncan, and not to the latter alone, and therefore could not be discounted against the plaintiff in his individual capacity, I have only to remark that this .may have been the fact, and if it were so, there can be no doubt but that Mr. Nicholson, who has been bred a lawyer, and whose mind has been thereby liberalized, will know too well the obligation which he is under to withhold from the representatives of his deceased brother, the reward due to services rendered in his behalf. Mr. Nicholson, however, was not a party to the record. The plaintiff, Mr. Duncan^ was the ostensible claimant in those *155 «ases, and the client of the deceased; and as such, was certainly a fit subject for the discount filed to operate upon alone.
Jeter, for the motion.
Simkins and McDuffie, contra,
The prominent facts then which arrest the attention in this case, and point with force to the conclusion which ought to be drawn from them, are, the great value of the property in contest; to which may be added, the doubtful nature of the right to be tried. The legal discernment and skill required in the arrangement and management of causes, involving principles complicated in their nature, and difficult of solution, the awakened anxiety of the client, embarking in such a contest, these considerations attach on the side of the employer. On' the part of the attorney, the flattering and (from universal practice,) I will add just expectation, that an ample remuneration would await his professional exertions, the laudable anxiety not to disappoint the fond hopes and high expectations entertained by the client, public opinion, a self approving consciousness of merit, these, with ten thousand other honorable incentives, which present themselves to liberal and correct minds, and which lead to infinite labor and exertion on the part of the counsel retained, certainly entitle him to a reward, which ordinary causes do not call for or allow. Cases of the description of the one now before us, may be said therefore to form an exception to a general rule ; and in all such there can be no question but ajury, where compensation is withheld, is the proper tribunal tp ascertain and fix the allowance, which reason and justice demand.
On this occasion I think they have acted correctly in finding the verdict which is here complained of; and therefore that the motion for a new trial should not prevail,
Justices Calcock, Johnson and Mott, concurred.
Mr. Justice Richardson, dissented..